UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| WENONA WHITE, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>TIMOTHY F. BUKOWSKI, LT. MICHAEL )<br>DOWNEY, HEATHER GILL, TIMOTHY J. )<br>MENARD, CLYDE W. DAYHOFF, and )<br>CHAREE SANGSTER, in their individual )<br>capacities, )<br>)<br>Defendants. ) | Case No. 11-CV-2221 |

## OPINION

This case is before the court for ruling on Defendants' Motion for a *Pavey* Hearing (#36).[1] This court has carefully considered Defendants' Motion, Plaintiff's Memorandum in Response (#40), and Defendants' Reply (#42). After careful consideration, this court concludes that a *Pavey* hearing should be held in this case. Accordingly, Defendants' Motion (#36) is GRANTED. This case is scheduled for a telephone status conference on April 28, 2014, at 9:30 a.m. so the case can be set for a *Pavey* hearing.

### BACKGROUND

On September 19, 2011, Plaintiff, Wenona White, filed a Complaint (#1) pursuant to 42 U.S.C. § 1983 against Defendants, Timothy F. Bukowski, Lt. Michael Downey, Heather Gill, Timothy J. Menard, Clyde W. Dayhoff, and Charee Sangster. Plaintiff alleged that she

---

[1] When there is a genuine dispute as to the material fact of exhaustion, the court should hold a hearing, known as a *Pavey* hearing, to determine whether or not a prisoner has exhausted administrative remedies, as required by the Prison Litigation Reform Act. *See Pavey v. Conley*, 544 F.3d 739, 741-42 (7th Cir. 2008).

was booked into the Kankakee County Detention Center as an inmate on September 11, 2009. She alleged that she was in the late stages of pregnancy. She alleged that, on September 22, 2009, she went into labor and was eventually transported to the hospital. She alleged that a C-section was performed and the baby girl delivered was born with serious, nearly fatal birth defects caused by oxygen deprivation due to a condition known as placenta previa. Plaintiff alleged that the serious and substantial birth defects could have been prevented had Defendants provided her with proper medical care and attention while she was incarcerated at the Kankakee County Detention Center from September 11, 2009, until the birth of the baby on September 22, 2009. Defendants filed their Answer and Affirmative Defenses (#16) on November 3, 2011. One of the affirmative defenses was that Plaintiff failed to exhaust the grievance procedure available to her at the Kankakee County Detention Center prior to filing her federal lawsuit. Discovery orders were entered in this case, and discovery has proceeded.

## PENDING MOTION

On March 6, 2014, Defendants filed a Motion for a *Pavey* Hearing (#36), with attached exhibits, including excerpts from the transcript of Plaintiff's deposition. Defendants argued that this court should conduct a *Pavey* hearing to determine whether Plaintiff has exhausted her administrative remedies pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Defendants stated that the key players in Plaintiff's case had recently been deposed and it was clear that the issue of exhaustion was now ripe for consideration by the court.

Defendants argued that Plaintiff was detained at the Jerome Combs Detention Center

(JCDC) from September 11, 2009 through September 30, 2009, except for a 96-hour window (between September 22 and 26) during which time she gave birth at Provena St. Mary's Hospital to a daughter, Johnay. Defendants stated that Plaintiff did not receive any prenatal care in July, August or September 2009 before her arrest. When she was seen by an intake officer on September 11, 2009, Plaintiff did not have any complaints in connection with her pregnancy and did not identify any special medical issues or problems. Defendants further stated that, on September 18, 2009, Physician's Assistant Timothy Menard attempted to examine and assess Plaintiff. Plaintiff refused to be seen and signed a Treatment Refusal Form after telling a nurse she did not want to go down to the jail's medical pod. Plaintiff testified at her deposition that she did not want to go to the medical pod because she was feeling sick, however, she also testified that she did not advise anyone when she signed the Treatment Refusal Form that she was feeling sick.

Four days later, at or shortly before 5:10 a.m. on September 22, 2009, Plaintiff woke up in pain, believing she was going into labor. She rang the buzzer for assistance and a female first responder came to her cell to check on her. Plaintiff told the first responder that she believed she was going into labor and that she wanted an ambulance. An ambulance was called shortly thereafter by JCDC personnel. According to their report, paramedics were called to the scene at 5:13 a.m. and began to assess Plaintiff at 5:22 a.m. Paramedics were in the ambulance with Plaintiff by 5:32 a.m. and left the JCDC with Plaintiff at 5:42 a.m., arriving at Provena St. Mary's Hospital at 5:52 a.m. The report also stated that Plaintiff told the paramedics that she had no complications with this pregnancy, and that she had regular doctor appointments during the pregnancy.

3

The JCDC's Inmate Handbook outlines the policies and procedures at the jail, including the grievance procedures. Each inmate is given a copy of the Inmate Handbook at the time of his or her admittance. The grievance procedures set out in the Inmate Handbook state, in relevant part:

> Inmate Grievance Forms are provided by jail administration. Any grievance that you may have must be written on an Inmate Grievance Form and submitted to a staff member for proper delivery. You may submit grievances or complaints regarding any incident, condition, treatment, or other matters pertaining to the facility rules and regulations.
>
> . . .
>
> If your grievance is not answered to your satisfaction, you may submit a letter to the Illinois Department of Corrections Jail and Detention Standards Unit.

Plaintiff never submitted any grievances about any of the conditions or events complained about in her federal lawsuit.

On March 28, 2014, Plaintiff filed a Memorandum in Opposition to Defendants' Motion for a *Pavey* Hearing (#40). Plaintiff did not contest that JCDC had a grievance procedure or that she did not file a grievance. Plaintiff argued, however, that an inmate need not exhaust administrative remedies before filing a lawsuit if: (a) the administrative remedy is not "available" to the prisoner; (b) "special circumstances" exist which excuse the prisoner from the exhaustion requirement; or (c) the facility is equitably estopped from asserting the

4

exhaustion requirement. This court notes that Plaintiff's arguments on these points are rambling and hard to follow.[2]

In support of her first argument, Plaintiff argued that the administrative remedies existing at the jail were not available to her during her very brief stay there. Plaintiff argued that the narrow issue was whether JCDC's grievance procedure would have enabled her to compel the JCDC medical staff to have taken specific treatment actions that might have prevented the damage done to Plaintiff and her baby. Plaintiff also argued that, after the birth, any issues that she might have grieved would have become moot. Plaintiff further contended that "[a]n individual whose incarceration has ended prior to the commencement of the lawsuit is not subject to the exhaustion requirement." Plaintiff stated that, although she was in federal custody when she filed her lawsuit, she was not a jail inmate. Plaintiff recognized that the PLRA and the case law do not hold that a person who has moved to a different facility in a different penal system is exempt from the exhaustion requirement. Plaintiff argued, however, that once she left the jail, she could not obtain any relief from the jail's grievance procedure.

In support of her second argument, Plaintiff contended that her "unique circumstances" excused her from the need to exhaust administrative remedies. Plaintiff argued that her situation "did not lend itself to the Jail's grievance procedure." Plaintiff argued that a grievance would have been useless because resolution of any grievance "would have required Jail administration to order and direct the Jail's medical staff to treat [her] in

---

[2] This court further notes that Plaintiff's citations to Illinois law have little application to the issue of exhaustion under the PLRA.

a certain way." Plaintiff argued that this would not have been possible because medical decisions "are the exclusive province of medical professionals."

As far as her third argument, Plaintiff contended that the conduct of the medical staff equitably estopped the jail from asserting exhaustion of administrative remedies as an affirmative defense. Plaintiff argued that, by having her sign the refusal of treatment form, the jail and its medical staff "were taking steps to immunize themselves from any possible problems and/or issues that might arise pertaining to [her] pregnancy in the future." She argued that this action was in bad faith and sufficient to preclude the jail from asserting exhaustion of remedies as a defense.

On April 7, 2014, Defendants filed a Motion for Leave to File Reply (#41). This court entered a text order granting the Motion and the Reply Brief (#42) was filed in this case. In their Reply, Defendants argued that none of Plaintiff's arguments have merit. Defendants argued that, because Plaintiff has not contested that she did not file a grievance, the case should be dismissed due to Plaintiff's admitted failure to exhaust her administrative remedies. Alternatively, Defendants argued that, if this court concludes that questions of material fact exist with respect to the issue of exhaustion, a *Pavey* hearing should be set within 21 days to consider evidence on the matter.

ANALYSIS

"Prisoners must properly exhaust all available administrative remedies before pursuing claims, including § 1983 claims, in federal court." *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013), *citing* the Prison Litigation Reform Act (PLRA), 42 U.S.C. §

6

1997e(a) (2006). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The Seventh Circuit has held that "complaints about medical treatment in prison are complaints about 'prison conditions,'" and subject to the exhaustion requirement. *Witzke v. Femal*, 376 F.3d 744, 751-52 (7th Cir. 2004), *quoting Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 534 (7th Cir. 1999). The main purpose of the exhaustion requirement is to alert the state to the problem and allow the state to take corrective action. *See Turley*, 729 F.3d at 649. A prisoner must exhaust administrative remedies even where the relief sought, such as monetary damages, cannot be granted by the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Therefore, an inmate must exhaust administrative remedies regardless of the relief sought and offered through administrative channels. *Booth v. Churner*, 532 U.S. 731, 741 (2001); *see also Larkin v. Galloway*, 266 F.3d 718, 722-24 (7th Cir. 2001). And exhaustion is required even if the prisoner believes that exhaustion is futile. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), *citing Booth*, 532 U.S. at 741 n.6. "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Ngo*, 548 U.S. at 93, *citing Nussle*, 534 U.S. at 525. Exhaustion is an affirmative defense, and the burden of proof is on the defendants. *Turley*, 729 F.3d at 650; *Kaba*, 458 F.3d at 681.

In this case, Defendants have shown, and Plaintiff has not disputed, that a grievance

procedure was available at the jail and that Plaintiff did not file a grievance. The question then becomes whether there is a genuine issue of fact regarding Plaintiff's failure to exhaust administrative remedies which requires a hearing in this case.

This court first concludes that there is no need for a hearing regarding Plaintiff's equitable estoppel argument. The Seventh Circuit has avoided deciding whether equitable estoppel applies to the PLRA's exhaustion requirement. *See Kaba*, 458 F.3d at 687; *Lewis v. Washington*, 300 F.3d 829, 834 (7th Cir. 2002). However, the Seventh Circuit recognized that "[t]o establish equitable estoppel, the party claiming estoppel must show: (1) a misrepresentation by the opposing party; (2) reasonable reliance on that misrepresentation; and (3) detriment." *Lewis*, 300 F.3d at 834; *see also Powell v. Davis*, 415 F.3d 722, 728 (7th Cir. 2005); *Miller v. Thurmer*, 2011 WL 3687596, at *8 (E.D. Wis. 2011). Additionally, because Defendants are government actors, Plaintiff must show affirmative misconduct, in the nature of an affirmative act to misrepresent or mislead. *See Lewis*, 300 F.3d at 834; *Miller*, 2011 WL 3687596, at *8; *see also Hemphill v. New York*, 380 F.3d 680, 688-89 (2d Cir. 2004) (finding that the defendants could be estopped from presenting an affirmative defense of non-exhaustion where the plaintiff claimed that he was subjected to oral and physical threats to get him to drop his grievance and not pursue it any further). This court agrees with Defendants that Plaintiff's argument regarding equitable estoppel is confusing to say the least. This court also agrees that there is no apparent connection between Plaintiff's signing of the refusal form and her failure to ever file a grievance. Based upon Plaintiff's own deposition testimony, she signed the refusal form because she refused treatment. This court concludes, based on the parties' arguments, that Plaintiff cannot satisfy

8

the requirements for establishing equitable estoppel because she has not even claimed that Defendants subjected her to any threats regarding the grievance process or that she relied on any representations made by Defendants in failing to file a grievance. *See Miller*, 2011 WL 3687596, at *8.

This court also agrees with Defendants that Plaintiff's "special circumstances" argument has no merit under the applicable case law. Defendants have correctly pointed out that Plaintiff's claim, that she did not receive appropriate medical care, is hardly unique. Plaintiff is essentially arguing that, because her claim involves medical treatment, no grievance was necessary. That is clearly not the law. As this court has already noted, the Seventh Circuit has held that "complaints about medical treatment in prison are complaints about 'prison conditions,'" and subject to the exhaustion requirement. *Witzke*, 376 F.3d at 751-52, *quoting Perez*, 182 F.3d at 534. Defendants have aptly noted that thousands of other inmates before Plaintiff have filed grievances and then filed lawsuits claiming that they received insufficient medical care from those in charge of their care. Exhaustion of administrative remedies is necessary prior to proceeding with such a claim regarding inadequate medical care. *See, e.g., Roberts v. Neal*, ___ F.3d ___, 2014 WL 929047, at *1 (7th Cir. 2014) (recognizing that prisoner was required to exhaust his administrative remedies regarding his claim that he received inadequate medical treatment for a broken hand).

This court concludes, however, that a *Pavey* hearing is necessary regarding Plaintiff's argument that the jail grievance procedure was not "available" to her. "The duty to exhaust administrative remedies as a precondition to suing under section 1983 is limited to those remedies that are 'available.'" *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013), *citing* 42

9

U.S.C. 1997e(a). To be available, a remedy must be available in fact and not merely in form. *Schultz*, 728 F.3d at 620. The court in *Kaba* explained:

> [W]hen the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited. On the other hand, when prison officials prevent inmates from using the administrative process . . ., the process that exists on paper becomes unavailable in reality.

*Kaba*, 458 F.3d at 684. A remedy is "unavailable" if prison employees fail to provide inmates with the forms necessary to file an administrative grievance, give erroneous advice about the grievance process, "or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Kaba*, 458 F.3d at 684, *quoting Dole*, 438 F.3d at 809. Also, a remedy is not "available" within the meaning of the PLRA to a person physically unable to pursue it. *Hurst v. Hantke*, 634 F.3d 409, 412 (7th Cir. 2011); *Miller*, 2011 WL 3687596, at *6.

This court is not persuaded by Plaintiff's argument that the grievance procedure was not available to her because it could not have achieved the desirable result. That is clearly not the standard under the PLRA. *See Booth*, 532 U.S. at 741 (an inmate must exhaust administrative remedies regardless of the relief sought and offered through administrative channels). Further, Plaintiff's argument that she was not required to exhaust because she was no longer a jail inmate at the time she filed her lawsuit is not supported by the applicable law. Under the PLRA, prisoners must exhaust all available remedies concerning prison conditions prior to bringing a suit under federal law. *Witzke*, 376 F.3d at 749, *citing Nussle*, 534 U.S. at 523 (2002). The PLRA defines a prisoner as "any person incarcerated or detained in any

facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." *Witzke*, 376 F.3d at 750, *quoting* 42 U.S.C. § 1997e(h). Plaintiff has conceded that she was in federal custody at the time she filed her lawsuit.

However, Plaintiff has raised issues regarding whether the grievance procedure was available to her because of her circumstances and the short time she was at the JCDC. Defendants insist that administrative remedies were available. The Seventh Circuit has recently stated that this type of factual dispute requires an evidentiary hearing to resolve. *See Roberts*, 2014 WL 929047, at *1. The court stated:

> It's true that while a trial is the standard means of resolving factual disputes, a judge can resolve an issue of exhaustion, like other threshold issues (such as jurisdiction), himself, in order to avoid multiple trials in the same case. But he can do that only after conducting an evidentiary hearing.

*Roberts*, 2014 WL 929047, at *1, *citing Pavey*, 544 F.3d at 741-42. This court therefore concludes that there are factual issues regarding the availability of exhaustion that require a *Pavey* hearing.

In *Pavey*, the Seventh Circuit has detailed the sequence to be followed in a case in which exhaustion is contested:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not

11

exhaust administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey*, 544 F.3d at 742. A *Pavey* hearing is an evidentiary hearing, and the court is permitted to make findings of fact and credibility assessments of witnesses at the hearing. *Hall v. Thomas*, 2012 WL 1866881, at *2 (S.D. Ill. 2012).

IT IS THEREFORE ORDERED THAT:

(1) Defendants' Motion for a *Pavey* Hearing (#36) is GRANTED.

(2) This case is scheduled for a telephone status conference on April 28, 2014, at 9:30

a.m. so the case can be set for a *Pavey* hearing.

ENTERED this 22nd day of April, 2014.


s/COLIN S. BRUCE
U.S. DISTRICT JUDGE